UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                               Criminal Case No. 15-20008

Terrance Lombard,                 Sean F. Cox
                                                   United States District Judge

    Defendant.
_____/

## OPINION & ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

In this criminal action, Defendant Terrance Lombard ("Lombard") is charged with drug offenses. The matter is currently before the Court on Lombard's Motion to Suppress. The motion has been fully briefed by the parties and the Court held an evidentiary hearing on October 26, 2016. For the reasons set forth below, the Court shall DENY the motion.

## BACKGROUND

Lombard is charged with: 1) Conspiracy to Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); and 2) Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1) (Count Two). The Indictment also contains forfeiture allegations.

Defendant recently filed two motions: 1) a motion requesting leave to file a motion to suppress (D.E. No. 31); and 2) a Motion to Suppress (D.E. No. 30). This Court granted leave to file the late Motion to Suppress, via a text-only order on October 17, 2016.

The charges in this action arise out of an incident that took place in March of 2013. On

1

March 22, 2013, Lombard was pulled over by the police while he was driving an automobile.

Lombard's motion and brief assert that the stop and subsequent search of his vehicle were illegal. In his Motion to Suppress, Defendant Lombard challenges the stop of his vehicle, and its subsequent search, in a very general way. Lombard asserts that an evidentiary hearing is needed to establish the facts surrounding the stop and the subsequent search.

In response, the Government contends that Lombard's motion should be denied because: 1) a police officer stopped Lombard after a traffic infraction and had at least reasonable suspicion that the vehicle contained evidence of drug trafficking; 2) the officer making the stop had probable cause to search the vehicle, including because a trained and certified drug dog indicated the vehicle contained drugs; and 3) in any event, there was probable cause to search the vehicle based on information from a wiretap and observations by law enforcement officers prior to the stop.

With the issues so framed by the parties, the Court held an evidentiary hearing on October 26, 2016.

The Government called the following individuals as witnesses at the evidentiary hearing: 1) Officer Richard Chipman; and 2) Officer Brian Shock. The Defense cross-examined those witnesses.

The Government admitted a number of exhibits: 1) Affidavit in Support of Wiretap; 2) Phoenix Police Department Report, dated March 27, 2013; 3) DEA Report by Special Agent Ryan McCormick, dated April 3, 2013; 4) Roseville Police Department Report by Officer Shock, dated March 23, 2013; 5) Royal Oak Police Department Report by Officer Chipman, dated March 23, 2013; 6) DEA Report by Special Agent Jeffrey Campbell, dated April 3, 2013; 7) a

video from a DEA camera[1]; 8) an audio recording from the Arizona wiretap; and 9) transcripts of Arizona wiretap recordings.[2]

Defendant admitted the following exhibits: A) photographs of PVC pipes; and B) a Chemical Analysis Report.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Lieutenant Brian Shock has been employed by the Roseville Police Department for approximately eighteen years. On March 22, 2013, Officer Shock was working patrol in a semi-marked patrol car and was wearing a police uniform.

Officer Richard Chipman has been a police officer with the Royal Oak Police Department for eighteen years. He works his patrols with a trained and certified canine. In March of 2013, he was working with a trained and properly certified canine, named Ryker. Ryker is trained and certified to detect the presence of narcotics. On March 22, 2013, Officer Chipman and Ryker were called to assist the Roseville Police Department with a traffic stop in

---

[1] That video was referenced in the Government's Exhibit 6 and Defendant requested that it be provided to the Court as an exhibit.

[2] The audio from the recordings was referenced in the Government's Exhibits 2 and 3. Because the conversations were in Spanish, they were translated and a transcript was prepared. Defendant requested that the recordings and transcript be provided to the Court as exhibits.

Detroit, Michigan, in the area of Rosemont and Hessel.

Several months prior to the incident in question, federal and local law enforcement officers in Phoenix, Arizona conducted wiretaps of several persons involved in a suspected drug trafficking/transportation organization. During their investigation, the officers learned that the organization had a specific method of moving and concealing the drugs – placing them inside PVC pipes in the axles of semi trucks. Through the wiretaps, law enforcement learned, and shared with local law enforcement agents, that Kenneth Del Torro was coming to Detroit to deliver a shipment of drugs concealed in PVC pipes and was planning to meet with Lombard to make the delivery. DEA agents and some assisting local officers set up physical surveillance at the Flintstone Marble and Granite truck yard at approximately 5:00 p.m. on March 22, 2013. Later that night, agents observed Lombard's truck, and a semi tractor trailer, arrive in the yard.

Officer Shock did not take part in that physical surveillance of the yard. But Officer Shock, along with another officer, was assisting the DEA with its ongoing narcotics investigation on that night. Officer Shock was briefed as to the investigation. Special Agent McCormick advised that Lombard was suspected of being involved in the trafficking of a large quantity of illegal narcotics. Specifically, Officer Shock was advised that Lombard was suspected of receiving a large quantity of narcotics at a location in the area of 8 Mile Road and Lahser. The officers advised that the narcotics were believed to be concealed inside PVC pipes.

Officer Shock, and an officer in another car, both drove to the area. Via radio, Officer Shock was advised that the officers conducting surveillance at the yard observed something changing hands from a semi trailer to the bed of Lombard's pickup truck.

Officer Shock located and followed Lombard's silver Ram truck for a short time before

4

pulling Lombard over. During the time he was following Lombard's truck, a passenger exited the truck. In addition, while Officer Shock was following the truck, he saw Lombard make three left turns without signaling that he was going to turn.

Special Agent Roel, one of the DEA agents, then asked Officer Shock to pull the truck over. Officer Shock pulled Lombard's truck over at approximately 1:30 a.m. Via radio, Shock made a request for assistance from a canine unit.

After pulling Lombard over, Officer Shock exited his patrol car and approached the truck. In doing so, Officer Shock observed a number of white PVC pipes, that were capped at the ends and appeared to be covered in axle grease, in the open bed of Lombard's pickup truck. Some of them were wrapped in black plastic. These observations were significant to Shock because the DEA officers had advised that Lombard was expected to take possession of narcotics concealed inside PVC pipes. Shock also knew, from his training and experience, that axle grease is often used to mask the odor of narcotics.

As Officer Shock approached the driver's side of the truck, he ordered the driver to put his hands in the air. Lombard first complied, but then moved and concealed his hands for a few moments. Lombard then placed his hands on the steering wheel of the truck. Shock asked Lombard to exit his truck and Lombard complied.

Officer Shock identified the driver as Lombard. Lombard appeared nervous. Officer Shock asked Lombard if he had any contraband in the truck and Lombard stated that he did not, but that he had some old PVC pipes in the bed of his truck that he was going to throw out.

Officer Chipman and Ryker arrived on the scene at approximately 1:44 a.m. Officer Chipman then had Ryker perform an exterior sweep of the truck and Ryker indicated the smell of

narcotics coming from the bed of Lombard's truck.  Officer Chipman then advised the other officers that the canine had detected the odor of narcotics coming from the truck.  The canine unit was on the scene for a total of five to ten minutes.

After having been advised of the narcotics alert from the canine unit, the officers searched Lombard's truck.  An off-white substance was found inside the PVC pipes.

Lombard was arrested and Officer Gudenau transported Lombard to the police station.  Lombard's truck was towed and impounded and the evidence found in the truck was seized.

Special Agent McCormick field-tested the off-white substance that was inside one of the PVC pipes seized from Lombard's truck and it tested positive for cocaine.  A later chemical analysis, however, revealed that the substance contained inside the PVC pipes seized from Lombard's truck was heroin.

## ANALYSIS & CONCLUSIONS OF LAW

The Fourth Amendment of the United States Constitution prohibits unreasonable search and seizures.  Stopping a vehicle and detaining its occupants amounts to seizure under the Fourth Amendment.  *United States v. Stubblefield*, 682 F.3d 502, 505 (6th Cir. 2012).  The reasonableness of a traffic-stop seizure depends on:  1) whether the stop was justified at its inception; and 2) whether the scope and duration of the stop was reasonably related to the circumstances that justified the stop initially.  *Id.*  An officer may not detain a car's occupants longer than reasonably necessary to complete the purpose of the stop unless the officer develops reasonable, articulable suspicion of additional criminal activity.  *Id.*

"In order to effect a traffic stop, an officer must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity."  *United States v. Lyon,* 687 F.3d 754,

763 (6th Cir. 2012) (citing *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)). Here, there was both.

First, the Court finds that Officer Shock had probable cause to believe that a traffic violation (a civil infraction) had occurred.

"It is well-established that where an 'officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment.'" *United States v. Hill*, 782 F.3d 289, 298 (6th Cir. 2015) (quoting *United States v. Bradshaw*, 102 F.3d 204, 201 (6th Cir. 1996)).

In this case, shortly before pulling Lombard over, while following behind Lombard's truck, Officer Shock observed Lombard make three left turns without signaling that he was going to turn. Under Michigan law, it is a civil infraction for an operator of a motor vehicle to a make a turn without signaling. *See* Mich. Comp. Laws § 257.648. Thus, Officer Shock had probable cause to believe that a civil infraction had occurred and lawfully stopped Lombard's truck. It is "immaterial, for purposes of the initial stop," that Officer Shock was following Lombard's vehicle at the time of the traffic violation. *United States v. Hill*, 430 F.3d at 352.

"If the particular officer has probable cause to believe that a traffic offense has occurred, the stop is permissible 'regardless of whether this was the *only basis* or merely one basis for the stop.'" *United States v. Hill*, 430 F.3d at 352 (quoting *Bradshaw*, 102 F.3d at 210).

Here, at time that he pulled Lombard's truck over, Officer Shock also had a reasonable suspicion that Lombard was involved in narcotics trafficking.

Reasonable suspicion requires more than a hunch, but is satisfied by likelihood of criminal activity less than probable cause. *United States v. Lyons*, 687 F.3d at 763. Whether

reasonable suspicion exists is considered under the "totality of the circumstances," considering all of the information available to law enforcement officers at the time. *Id*. It is also "well-established that an officer may conduct a stop based on information obtained by fellow officers." *Id*. at 765. "Variously called the 'collective knowledge' or 'fellow officer' rule, this doctrine recognizes the practical reality that effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one office to another." *Id.*

Here, Officer Shock was assisting the DEA with an ongoing narcotics investigation on the night in question. Before pulling Lombard's truck over, Officer Shock had been briefed as to that investigation. Special Agent McCormick advised that Lombard was suspected of being involved in the trafficking of a large quantity of illegal narcotics. He was advised that Lombard was suspected of planning to received a large quantity of narcotics at a location in the area of 8 Mile Road and Lahser, that the narcotics were believed to be concealed inside PVC pipes, and that officers conducting surveillance at the yard observed something changing hands from a semi trailer to the bed of Lombard's pickup truck. Thus, even without having observed Lombard's failure to signal before turning, Officer Shock had a reasonable suspicion that Lombard was involved in narcotics trafficking that would have allowed him to lawfully stop the vehicle.

Moreover, that reasonable suspicion quickly developed into probable cause, which allowed the officers to search Lombard's truck.

"Generally, the Fourth Amendment requires police officers to obtain a warrant prior to conducting a search." *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (citations omitted). "[A] search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject to only a few specifically established and well-delineated exceptions."

*Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One such exception is the automobile exception. As explained in *Smith*:

> Under the automobile exception, police officers may conduct a warrantless search of a vehicle if they have "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998) (citations omitted); *Smith v. Thornburg*, 136 F.3d 1070, 1074 (6th Cir. 1998) (citations omitted). Probable cause is defined as " 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.' " *Smith,* 136 F.3d at 1074 (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th 1990)). The court's determination of whether probable cause existed at the time of the search is a " 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.' " *Id*. at 1074-75 (citations omitted). In determining whether there was probable cause, the court does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the "objective facts known to the officers at the time of the search." *Id*. at 1075.

*United States v. Smith*, 510 F.3d at 647-48.

In this case, after pulling Lombard's truck over, Officer Shock's reasonable suspicion developed into probable cause to believe that evidence of narcotics trafficking would be found in Lombard's truck.

First, after pulling Lombard's truck over, Officer Shock observed white PVC pipes in the bed of Lombard's truck. And those PVC pipes were capped at both ends, making it appear that they contained something, and the pipes were visibly covered in what appeared to be axle grease. Officer Shock knew, through his training and experience, that axle grease is often used to mask the odor of narcotics. In addition, Officer Shock had also been briefed as to the investigation, and had been advised that Lombard was suspected of planning to received a large quantity of narcotics at a specific location in Detroit, that the narcotics were believed to be concealed inside PVC pipes, and that officers conducting surveillance at that location observed something

9

changing hands from a semi trailer to the bed of Lombard's pickup truck. Thus, Officer Shock had probable cause, by virtue of the collective knowledge of the investigative team and his own observations, to believe that narcotics would be found in Lombard's truck.

Second, after pulling Lombard over, but before searching the vehicle, the canine unit arrived on the scene. Officer Chipman and Ryker arrived approximately fifteen minutes after Lombard had been pulled over. Officer Chipman then had Ryker perform an exterior sweep of the truck and Ryker indicated the smell of narcotics coming from the bed of Lombard's truck – where the white PVC pipes were. Officer Chipman then advised that the canine had detected the odor of narcotics coming from the bed of the truck. "It is well-established in [the Sixth] Circuit that an alert by a properly-trained and reliable dog establishes probable cause sufficient to justify a warrantless search of a stopped vehicle." *United States v. Hill*, 195 F.3d at 273.

Accordingly, the evidence from Lombard's truck was seized legally and Lombard's Motion to Suppress must be denied.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant Lombard's Motion to Suppress (D.E. No. 30) is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: November 3, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on

...

November 3, 2016, by electronic and/or ordinary mail.

                              S/Jennifer McCoy
                              Case Manager