UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

TERRENCE LOMBARD,

                      Defendant.

_____/

Case No. 15-20008

Sean F. Cox
U.S. District Judge

David R. Grand
U.S. Magistrate Judge

**REPORT AND RECOMMENDATION TO DENY
PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO
VACATE, SET ASIDE, OR CORRECT SENTENCE (ECF No. 77)**

Before the Court is *pro se* Petitioner Terrence Lombard's ("Lombard") Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, and memorandum in support. (ECF No. 77.) The government filed a response (ECF No. 96), and Lombard filed a reply (ECF No. 101). The Honorable Sean F. Cox, who presided over Lombard's case, referred the motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 103.)

**I. RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Lombard's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF No. 77)** be **DENIED**.

**II. REPORT**

**A. Background**

Lombard's motion arises from his conviction for possession of heroin with intent to distribute and for conspiracy to possess heroin with intent to distribute. In its opinion upholding Lombard's convictions, the Sixth Circuit provided the following description of the salient facts:

Agents of the Drug Enforcement Agency (DEA) and state and local police officers in Phoenix, Arizona, were investigating Kenneth Del Toro's involvement in a narcotics conspiracy in which the conspirators transported drugs by putting them in PVC pipes, which in turn were hidden inside of the axles of semi-truck and trailer rigs. Through their investigation, agents learned that Del Toro planned to use this method to ship drugs to someone in Detroit, Michigan. Agents tracked Del Toro's shipment to an industrial yard in Detroit, where they saw Del Toro remove PVC pipes from the axles of the trailer and hand them over to Lombard. Lombard put the pipes in the bed of his pickup truck. Agents followed Lombard and directed Roseville Police Officer Lieutenant Brian Shock, who was a member of the interdiction team, to stop Lombard after he committed several traffic violations. Lieutenant Shock observed grease-covered PVC pipes in the truck bed as he approached Lombard. Lieutenant Shock detained Lombard and called for assistance from an officer with a drug-sniffing dog. Royal Oak Police Officer Richard Chipman arrived about fifteen minutes later. His dog alerted on the truck near the pipes. Lombard was arrested and his truck impounded. Agents discovered approximately eleven kilograms of heroin hidden inside of the pipes. Later, agents executed a search warrant on Lombard's house and found another eighty-one grams of heroin, a money counter, a digital scale, a suspected drug ledger, packaging materials, unlabeled pill bottles, and about $42,000 in cash.

(ECF No. 73, PageID.962-63.)

> i.   *The Charges*

The charges in this case arise from the narcotics found in Lombard's vehicle and residence.

(ECF No. 751, PageID.11395.) Lombard was initially indicted on January 8, 2015. (ECF No. 1.)

The indictment charged Lombard with the following:

- Count One (1), Conspiracy to Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and

- Count Two (2), Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1).

(ECF No. 1, PageID.1-2.)

> ii.   *Pre-Trial*

During the first 15 months following his initial appearance, Lombard was represented by three different attorneys (two of whom were appointed). Each of those attorneys successfully

moved to withdraw.  However, in granting the third withdrawal motion on June 29, 2016, Judge Cox warned Lombard that his fourth attorney would likely be the last one that he would appoint. (ECF No. 85, PageID.1069) ("I'll appoint one more lawyer for you, sir.  And if it doesn't work out with that lawyer, you're going to probably end up representing yourself or be with standby counsel, okay?").  About two weeks later, on July 14, 2016, attorney Robert F. Kinney, III was appointed. At an October 26, 2016 suppression hearing about three months later, when Mr. Kinney moved to withdraw based on Mr. Lombard's purported dissatisfaction with his services, Judge Cox expressed his unwillingness to appoint another attorney and gave Lombard the choice of either proceeding represented by Mr. Kinney or proceeding *pro se*.

What followed was an extended colloquy, mainly between Judge Cox and Lombard, but also with interjections from Mr. Kinney and the prosecutor (Mr. Cares), in which Judge Cox expressed his unwillingness to appoint new counsel and his strong recommendation that Lombard choose to proceed with Mr. Kinney's representation rather than proceeding *pro se*:

> THE COURT: Okay. Do you understand that the rules of evidence govern what evidence may or may not be introduced at trial, that is, in representing yourself you must abide by these very technical rules, and they would not be relaxed for your benefit?  Do you understand that?
>
> DEFENDANT LOMBARD: No, I don't understand that.  Again, let the Court -- I don't -- I haven't practiced federal law, so I don't understand what you're saying applies to me.
>
> THE COURT: Okay.
>
> DEFENDANT LOMBARD: What I do understand is that I had Mr. Kinney appointed to me in July, which I haven't seen him but maybe three times since then.  Now, the Court stated to me that Mr. Kinney had family issues, and I hadn't seen him for two months.  I asked Mr. Kinney to file some discovery motions for me.
>
> THE COURT: You know what?  This is the same old story I've heard with every attorney that's represented you, starting with Ms. Woods.

MR. KINNEY: Well, it's -- I have a paper trail and it's nothing -- it's nothing --

THE COURT: I'm going to ask the question again.  Do you understand that there's rules of evidence that govern what evidence may or may not be introduced at trial, that in representing yourself you must abide by these rules of evidence.  Do you understand that?

DEFENDANT LOMBARD: No, I do not.

THE COURT: The rules of evidence -- have you ever been -- I don't know. Has he been involved in prior evidentiary hearings.  I suspect sometime he might have.

MR. CARES: I don't know one way or the other, Your Honor.

THE COURT: Okay.  Well, I'm going to tell you, and you probably understand and know exactly what I'm talking about.  It's not your first trip down the criminal justice system road.  There are rules of evidence, and if you try the case on your own, you represent yourself, you're going to have to file [sic] them.  Do you understand that those rules govern the way a criminal action is tried in federal court, and you're going to be bound them if you represent yourself?  Do you understand that?

DEFENDANT LOMBARD: And again, no, I do not.

THE COURT: And that's how it's going to be.  I must advise you, Mr. Lombard, that in my opinion a trained lawyer like Mr. Kinney, who has been practicing for 30 years in the area of criminal defense, very successful, would defend you far better than you could defend herself.  I think it is unwise of you to try to represent yourself.  You are not familiar with the law.  You're not familiar with the court procedure.  You are not familiar with the rules of evidence.  Therefore, I strongly urge you not to try to represent yourself. And again, is it your decision not to have Mr. Kinney represent you?

DEFENDANT LOMBARD: And again, I'm not trying to represent myself.

THE COURT: Okay.

DEFENDANT LOMBARD: But I do need someone to advocate for me.

THE COURT: Okay.  But do you wish to have Mr. Kinney continue to represent you?

DEFENDANT LOMBARD: If Mr. Kinney wishes to advocate for me, and we can come to a norm, I have no problem.  But for him to tell me that I have to file motions myself, I just feel like that's a conflict of interest.

THE COURT: I'm not sure I understand what you're saying.

4

DEFENDANT LOMBARD: What I'm saying is, again, I've seen Mr. Kinney maybe three times, which Mr. Kinney had some family issues when he first was appointed to me in July.  I hadn't seen or talked to him until September.  And when I asked him to file certain motions, he informed me that I can file them myself.  I feel like that's a conflict of interest.

(ECF No. 72; PageID.914-17).

A comment by Mr. Kinney also shed further light on the nature of the discovery motion that Lombard wished Mr. Kinney to file:

MR. KINNEY: The motion that Mr. Lombard is talking about is a motion that he filed for discovery.  And I think it would be helpful if I could get an answer from either Mr. Cares or the Court.  My position to Mr. Lombard is once we -- I don't even have to ask for discovery, but if I make the demand, I don't have to file any motions.  It's Mr. Cares' obligation to give me that kind of material.

THE COURT: Brady material, absolutely. We're all clear on that, correct?

MR. KINNEY: And Jencks.

THE COURT: Right.

MR. CARES: That's right.  And then as far as rule 16 discovery, the government had received a general request from previous counsel.  As the Court has indicated, this is -- Mr. Kinney is at least the third counsel, if not the fourth counsel.  And so we have provided our discovery that is required under rule 16, and again, as I said, as it pertains to the Brady material, if there's other documents that we are obligated to provide under rule 16 that we may not necessarily be obligated to provide under Brady or the Jencks, we will provide them.  I think they have all been provided so far, but I will again check with Mr. Kinney to make sure he has received all the discovery as well.

(*Id.*, PageID.919-20.)

Thus, it was clear from the record that Lombard's purported dissatisfaction with Mr. Kinney was based largely on the number of times Mr. Kinney saw him in person during the first three months following his appointment, and on Mr. Kinney's refusal to file a discovery motion that he deemed unnecessary and unwarranted.  (*Id.*).  Judge Cox rejected those as legitimate bases for appointing Lombard what would be his fifth attorney in this case, sticking to the warning he

had previously given to Lombard, that Mr. Kinney would be the last attorney the Court would appoint to represent him in this case:

> THE COURT: Okay. Just so the record is clear, Mr. Lombard was initially represented by Ms. Woods, who I believe was retained. That didn't work out. There was a motion to withdraw. I appointed Ben Gonek, a very well-known, with all respect, criminal defense lawyer. That didn't work out. There was a motion to withdraw. I appointed Otis Culpepper, a nationally-renowned criminal defense lawyer. That didn't work out. There was a motion to withdraw. And I appointed Mr. Kinney. And I noted at that time that that would be the final attorney that I would appoint for Mr. Lombard.

(*Id.*, PageID.920.)

Although Lombard continued to object to Judge Cox's ruling, given that his only options were to (1) proceed with Mr. Kinney or (2) proceed *pro se*, Lombard ultimately did not opt to proceed *pro se*, and Mr. Kinney continued to represent him during trial. (*Id.*, PageID.918.)

### iii.    Jury Trial, Conviction, and Sentence

Lombard's case proceeded to trial, with Mr. Kinney representing him throughout. The trial commenced on November 16, 2016, and on November 18, 2016 a jury convicted Lombard in Count One of Conspiracy to Distribute or Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and in Count Two of Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1). The verdict form for each count first asked the jury whether they found Lombard "guilty" or "not guilty," and then, if they found him guilty, how much heroin "was involved in the conspiracy as a whole." (ECF No. 51.) For each of the two Counts, there was an option to find that the quantity of heroin involved was "1000 grams (1 kilogram) or more," 100 grams or more but less than 1,000 grams (1 kilogram)," or "less than 100 grams." (*Id.*) In addition, the question as to Count One included the option, "none." (*Id.*)

For each Count, the jury found Lombard was guilty, and that the amount of heroin involved was 1,000 grams or more.  On March 15, 2017, Judge Cox sentenced Lombard to 210 months, running concurrently, followed by five years of supervised release, and a $200 special assessment.

<em>iv.     Appeal and § 2255 Motion</em>

On March 31, 2017, Lombard appealed his conviction and sentence to the United States Court of Appeals for the Sixth Circuit.  On March 19, 2018, the Sixth Circuit affirmed Lombard's conviction and sentence.  (ECF No. 73.)  The Sixth Circuit determined that the trial court had not erred in rejecting Lombard's motion to suppress, finding that (1) his Fourth Amendment rights were not violated by the stop of his vehicle, its subsequent search, and the seizure of the pvc pipes filled with heroin, and (2) the trial court properly applied a sentencing enhancement under § 2D1.1(b)(12) for maintaining a premises for the purpose of distributing controlled substances. (*Id.*)

Lombard then filed the instant § 2255 motion on October 18, 2019.  (ECF No. 77.)  In his motion, Lombard raises three issues, none of which were alleged in his appeal: (1) Lombard's Sixth Amendment right to effective assistance of counsel was violated when he was "forced" to proceed with Mr. Kinney as his trial counsel at the suppression hearing or proceed *pro se,* which violation was repeated at trial; (2) Mr. Kinney was ineffective for a variety of different reasons; and (3) he should be granted an evidentiary hearing with Judge Cox recusing himself from that matter.

## B.    Legal Standards

Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" based on a claim "(1) 'that the sentence was imposed in violation of the Constitution or the laws of the United States;' (2)

'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' or (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-427 (1962). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005). A § 2255 petitioner seeking to set aside his sentence has the burden of establishing his case by a preponderance of the evidence. *McQueen v. U.S.*, 58 Fed. App'x 73, 76 (6th Cir. 2003).

**C.    Analysis**

*1.    Denial of Request for New Counsel*

In his § 2255 motion, Lombard first argues that Judge Cox violated his Sixth Amendment rights by refusing to grant his request for new counsel in place of attorney Kinney.[1]

*a.    Procedural Default*

Before the Court addresses the merits of Lombard's contention that he was improperly denied new counsel, it addresses the government's argument that Lombard procedurally defaulted this argument by failing to raise it with the Sixth Circuit in his direct appeal. As one district court within the Sixth Circuit very recently explained:

> Except for a claim of ineffective assistance of counsel, a federal prisoner's failure to raise a claim on direct appeal results in a procedural default of that claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). For a federal prisoner to obtain

---

[1] The Court notes the government's argument that Lombard waived his Sixth Amendment right to the assistance of counsel at trial due to his "persistent, unreasonable demand for dismissal of counsel and appointment of new counsel ... is the functional equivalent of a valid waiver of counsel." *United States v. Green*, 388 F.3d 918, 921–22 (6th Cir. 2004) (*quoting United States v. Henderson*, No. 98–5216, 1999 WL 313842, at *2 (6th Cir. May 3, 1999)). However, because the Court finds that Lombard's motion should be rejected on the merits, it declines to decide whether his conduct amounted to a waiver.

review of a defaulted claim in a § 2255 motion, he must show cause to excuse his failure to raise the claim previously and actual prejudice resulting from the alleged violation. *Bousley*, 523 U.S. at 622; *Peveler*, 269 F.3d at 698-700. If a Petitioner cannot show cause and prejudice, he may be able to obtain review, if his case falls within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, such as when new evidence shows that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Bousley*, 523 U.S. at 622-23, citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

*Prather v. United States of America*, No. 3:17-CR-132, 2021 WL 1721848, at *5 (E.D. Tenn. Apr. 30, 2021).

In *Prather*, the court concluded, "Petitioner has not attempted to show cause or prejudice for his failure to raise this claim on direct appeal, nor has he attempted to show that he is actually innocent, thus his claim is procedurally defaulted." *Id.* The same analysis applies here. Lombard does not dispute that he failed to raise an objection to Jude Cox's refusal to appoint new counsel in place of attorney Kinney on his direct appeal to the Sixth Circuit. Nowhere in his motion does Lombard even acknowledge his default, much less present a justification for it. Nor in his reply brief did Lombard provide any justification for failing to raise the issue on direct appeal. (ECF No. 101.). Thus, Lombard did not demonstrate cause for failing to raise his claim regarding Judge Cox's decision not to replace Kinney[2] with a fifth attorney, and he did not show "actual innocence." Accordingly, Lombard procedurally defaulted that particular claim. Nevertheless, for the sake of completeness, the Court will also address Lombard's claim on the merits.

> b. *Inquiry into Lombard's Dissatisfaction with Appointed Counsel Under Benitez v. United States*

Lombard's claim regarding Judge Cox's decision not to appoint an attorney in Kinney's place relies on a limited proposition, set forth in *Benitez v. United States*, that where a defendant

---

[2] To be clear, this particular claim does not concern whether Mr. Kinney provided effective assistance in terms of his actual representation of Lombard. Rather, it only challenges Judge Cox's denial of Lombard's request to replace Kinney with another attorney.

9

moves for new counsel and the judge denies that motion without inquiring into the reasons for the request, his Sixth Amendment right to counsel has been violated. *See Benitez v. United States*, 521 F.3d 625, 634 (6th Cir. 2008). Here, however, because Lombard set forth the basis of his dissatisfaction with his appointed counsel during the hearing in question, no Sixth Amendment violation occurred.

In *United States v. Iles*, the Sixth Circuit set forth the general framework for evaluating a defendant's claim that he was improperly denied substitute counsel. *Iles* proceeds from the statement that "[t]he right to counsel of *choice*, unlike the *right* to counsel, however, is not absolute." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (emphasis in original). Thus, an indigent defendant who has been granted appointed counsel "has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *Id.*

Lombard does not contend he should have been provided any particular attorney. Instead, he relies on *Benitez*, which focuses on the more general principle underlying *Iles*, that "where a district court is on notice of a criminal defendant's dissatisfaction with counsel, the court has an affirmative duty to inquire as to the source and nature of that dissatisfaction." *Benitez*, 521 F.3d at 634. But, contrary to Lombard's interpretation, this does not mean the trial court must engage in an extensive back-and-forth with the defendant, or even ask him any particular questions. Rather, the "district court's inquiry is adequate when it allows 'all of the interested parties to present their respective evidence and arguments.' '[T]o meet this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it.'" *United States v. Chapman*, 796 F. App'x 873, 878 (6th Cir. 2019) (internal citations omitted).

10

With the proper standards in mind, it is clear that this case does not present a *Benitez* issue. In *Benitez*, the defendant indicated through his counsel at his sentencing hearing that he "did not wish to be represented by [his then-attorney]." The trial judge then merely inquired into whether Benitez understood the burdens he would face if he chose to represent himself, and did not inquire into the reasons for his dissatisfaction with counsel. Ultimately, Benitez continued through sentencing with that counsel. On appeal, the Sixth Circuit held that trial counsel's vague sentencing hearing statement "triggered the [trial] court's obligation to inquire further" "to determine the reasons for [Benitez's] dissatisfaction with his current counsel." *Benitez*, 521 F.3d at 632, 635 (6th Cir. 2008) (quoting *Iles*, 906 F.2d at 1131). The Sixth Circuit also noted that Benitez, due to his limited English proficiency, was unable to explain the basis of his dissatisfaction with his counsel on his own, without the aid of explicit judicial inquiry. Thus, the Sixth Circuit concluded that the trial court's failure "to inquire into the source and nature of Benitez's dissatisfaction [] violated [Benitez's] Sixth Amendment right to counsel." *Id.* at 635-36.

Lombard's case is distinguishable because, as shown above, he directly and clearly expressed the reasons for his dissatisfaction with his counsel to Judge Cox, explaining he was upset that Kinney had only visited him three times in the three months since he had been appointed, and that Kinney would not file the discovery motion Lombard requested. *See supra* at 3-5. Kinney gave even more context, explaining that he told Lombard he would not file the discovery motion because it was unnecessary and unwarranted. *See supra* at 5. In short, because Lombard clearly articulated the "source and nature" of his dissatisfaction with counsel to Judge Cox, there is simply no *Benitez* issue here.

11

*c. Lombard's Dissatisfaction with Appointed Counsel under Iles Test*

Lombard's argument fairs no better under *Iles*, which set forth the general test for determining whether a criminal defendant with appointed counsel was improperly denied substitute counsel. *See Iles*, 906 F.2d at 1130 n. 8.  The Sixth Circuit has recently stated the four factors of the *Iles* test as:

> (1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the matter; (3) the extent of the conflict between the party and the attorney and whether the conflict between the two was so great that it resulted in a total lack of communication, preventing an adequate defense; and (4) the balancing of these three factors with the public's interest in the prompt and efficient administration of justice.

*Chapman*, 796 F. App'x at 876.

Of these factors, timeliness carries neutral weight, but the other three factors strongly favor denying Lombard's motion.  First, as to timeliness, the government argues that Lombard's motion for substitute counsel was untimely because it would have required postponing the trial date. While an adjournment almost certainly would have resulted from granting Lombard's request, that alone would not be grounds to deny it had the circumstances warranted such drastic relief.  Rather, the Court looks to whether a defendant's request for new counsel could have been raised at an earlier proceeding but was instead unreasonably delayed by the defendant.  *See, e.g. United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008).  Here, it appears there was no significantly earlier time when Lombard could have raised his dissatisfaction with Kinney; Lombard raised that issue promptly after Kinney rejected the notion of filing the discovery motion Lombard had requested, and only about three months had elapsed between Kinney's appointment and Lombard's request for new counsel.  Thus, the relative timeliness of Lombard's request for substitute counsel is a neutral factor.

The second factor, the adequacy of the district court's inquiry into the basis of the defendant's dissatisfaction, requires only that the district court "allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011).  For all of the reasons discussed above, Lombard clearly not only had such an opportunity, but took full advantage of it, explaining the reasons why he wished the court to replace attorney Kinney.  *See Chapman* 796 F. App'x 880-81.

The third factor is whether the conflict between the defendant and his counsel was so great as to cause a "total breakdown in communication."  Generally this inquiry focuses not on whether "the frequency of such contact may [] have been satisfactory to [the Defendant]" but whether "the extent of the conflict between the attorney and client ... was so great that it resulted in a *total lack of communication* preventing an adequate defense.'" *Id.* at 881 (emphasis in original) (internal citations omitted).  Lombard's complaint is clearly at odds with this principle because in large part he challenged "the frequency" of Kinney's in-person visits, noting that the two only met in person three times.  Moreover, Lombard's relationship with attorney Kinney seems to have been functionally a productive one.  Kinney filed a motion to suppress that none of Lombard's prior attorneys had filed.  (*See* ECF No. 30).  And, while Kinney did not file the discovery motion Lombard had requested, that was not due to a lack of communication or neglect by Kinney.  Rather, as Kinney explained to Lombard, his decision was based on a reasoned determination that the motion was unnecessary and unwarranted as it would merely have required the disclosure of material that the government was already required to disclose. (*See* ECF. No. 42, PageID.293).  In sum, while Kinney may not have provided Lombard with the frequency of personal interaction Lombard desired, evidence shows there was ongoing, relatively fruitful communication between

the two of them.  Because there was far from a total lack of communication, this factor weighs against Lombard.

Lastly, when balancing the first three factors against "the public's interest in the prompt and efficient administration of justice[,]" the public interest clearly favors upholding Judge Cox's decision.  Judge Cox had already granted Lombard three prior substitutions, and Mr. Kinney was Lombard's third court-appointed (and fourth overall) attorney.  Lombard has not explained what granting a fifth attorney would have allowed him to accomplish that his other four could not.  On the other hand, the public has an interest in the prompt administration of justice, which was already being impeded by Lombard's seriatim requests for new counsel.  Particularly considering how weak Lombard's complaints were about Kinney's representation, the public's interest in avoiding further delay strongly outweighs the other factors.

Because an analysis of the *Iles* factors strongly supported denying Lombard's request to replace Kinney with a fifth attorney, Judge Cox's decision to require Lombard to either proceed represented by Kinney or proceed *pro se* did not violate his Sixth Amendment right to the assistance of counsel.

## 2.  *Ineffective Assistance of Counsel at Trial*

Lombard next presents several instances of what he alleges were ineffective assistance of counsel both pre-trial and at trial.  These include his counsel's failure to i) properly challenge the warrant at the suppression hearing; ii) challenge the agent's voice identification at trial; and iii) mount a *Daubert* challenge to the government's lab identification of the substance found in Lombard's truck's bed and home by introducing testimony of a competing expert witness.

A petitioner seeking to establish ineffective assistance of counsel must satisfy the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).

14

First, he must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687. "This requires showing that counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's performance is deficient only where it falls "below an objective standard of reasonableness." *Id.* at 687-88. Judicial scrutiny of counsel's performance "must be highly deferential." *Id.* at 689. A reviewing court should avoid second-guessing counsel and must ensure that "every effort is made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show that counsel's deficient performance prejudiced the defense. *Id.* at 687. To satisfy the prejudice prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Applying these principles, it is clear that Lombard's motion fails to establish ineffective assistance of counsel.

### a.   Failure to Request a Franks Hearing

Lombard's first argument is that his counsel was ineffective at the suppression hearing by failing to request a *Franks* hearing to challenge the affidavit of Detective Shock, which supported the warrant for the search of Lombard's house where heroin was found.[3]   (ECF No. 77,

---

[3] At the outset, the Court notes that Lombard's argument ignores that agents also found roughly 11 kg of heroin in his *truck*, and, that for purposes of both adjudication of guilt and sentencing, any amount over 1 kg of heroin is treated similarly. Moreover, as discussed above, *see supra* at 7, the Sixth Circuit already determined that the stop of Lombard's truck, the search of the truck bed, and the seizure of the heroin were valid. Thus, Lombard's arguments about the *subsequent search* of his home are immaterial; nothing about counsel's failure to challenge the warrant would have called into question the validity of the stop, search, and seizure of drugs from his truck; the fact that the drugs seized were in fact heroin; or the fact that Lombard gained possession of the drugs pursuant to a conspiracy consisting of at least him and Del Toro. Since that evidence amply

PageID.978.)   Under *Franks v. Delaware*, a defendant is permitted to challenge an affidavit underlying a search warrant where:

> the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

Lombard made no such showing here that would have warranted a *Franks* hearing because he presented no evidence that Detective Shock made any false statement with either intentional or reckless disregard for the truth.  Nor were several of the alleged untruths necessary to the finding of probable cause in the warrant.

Lombard's argument also lacks merit because it relies on a factual distortion, which he repeats throughout his motion.  Lombard's 2013 Dodge Ram, the truck in which the PVC pipes full of narcotics were discovered, was seized and then returned to Lombard with a Covenant Not to Sue.  Part of the Covenant states that the reason for the truck's return was that there was "not [a] supportable basis to show a connection to an illegal activities/narcotic incident, or part of a negotiated settlement."   The Covenant later stated that it "may not be used in any criminal proceeding for any purpose, and is meant only to show a satisfaction of all civil claims[.]" ECF No. 77, PageID.998.  Lombard repeatedly selectively quotes the Covenant, arguing that it states that there was no "connection to an illegal activities/narcotic incident" and omitting the qualifier "or part of a negotiated settlement" as well as the later disclaimer that the Covenant "is meant only to show a satisfaction of all civil claims[.]"  Moreover, the Sixth Circuit has already found that the evidence presented at trial included that: (1) Del Toro gave the PVC pipes which held the heroin

---

supported Lombard's convictions and sentence, Lombard's instant argument fails to show prejudice.

to Lombard, and that "Lombard put the pipes in the bed of his pickup truck" and drove off; (2) Lombard was stopped while driving the truck and that a drug-sniffing dog "alerted on the truck near the pipes;" and (3) after Lombard's truck was impounded, agents "discovered approximately eleven kilograms of heroin hidden inside of the pipes." (ECF No. 73, PageID.962-63.) Thus, Lombard has not shown that the Covenant operated to do anything other than release his vehicle as part of a settlement. And, in light of the other evidence, there is no likelihood that any ambiguity in the Covenant's verbiage would have changed the outcome of Lombard's conviction.

Next, Lombard argues that there were several discrepancies in the evidence underlying the search warrant. Specifically, Lombard points to a discrepancy between dates on the reports, an email between two investigators, in which Special Agent Ryan McCormick told Agent Grady Fisher that "If you let me know what you put in the reports, I'll make sure mine is a copy of it" (ECF. No. 77, PageID.1000), and detective Shock's statement at the suppression hearing that "[i]mmediately before the stop, I watched [Lombard's truck], but I didn't have surveillance on it." (ECF No. 72, PageID.931).

None of these purported inconsistencies indicate any sort of falsehood. Lombard never explains how the first issue, regarding date discrepancies in the reports, indicates an intentional falsehood rather than just an innocent mistake. The second issue, in context of the e-mail Lombard draws Agent McCormick's statement from, is merely an anodyne statement by investigators comparing their notes. The third issue, of Detective Shock's statement at the suppression hearing, is simply Detective Shock stating that, while he saw Lombard's truck before stopping it, he didn't have a sustained, uninterrupted view of it while pursuing him. His further testimony clarified that he did see it for a "short period of time" and observed Lombard make two left turns without

signaling.  *Id*.   Thus, all these purported inconsistencies Lombard raises are either innocent mistakes or not in fact inconsistencies at all.

Lastly, Lombard Points to the fact that the "reliable source" pointed to in the warrant was another member of law enforcement, Special Agent McCormick, and that, according to the warrant, Special Agent McCormick had indicated that "a subject known as Terrance Paul-Montazes Lombard" was "trafficking [] large quantities of cocaine," when, according to Lombard, "there was absolutely no evidence of cocaine trafficking . . ."  (ECF No. 77, PageID.978, 980.)  However, this statement was not necessary to the finding of probable cause.  *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (holding that the "movant must also show that the allegedly false statements were necessary for the magistrate's determination of probable cause.").  Even without the statement in question, the warrant contained sufficient probable cause as it relied on the drugs found in the truck and the detective's knowledge, based upon his experience, that someone transporting drugs would often have additional contraband stored in his home.

Because Lombard has not set forth any reasonable probability that false statements necessary to the finding of probable cause were knowingly, intentionally, or recklessly made by an affiant in the warrant affidavits, he fails to demonstrate that a *Franks* hearing would have been granted had his counsel requested one, or that an evidentiary hearing is required to resolve his claim.  Thus, Lombard fails to demonstrate that his counsel's performance was deficient under *Strickland*, insofar as counsel failed to request a *Franks* hearing.

### b.  Failure to Challenge Agent's Voice Identification

Next, Lombard argues that he was provided ineffective assistance of counsel because his counsel failed to introduce voice exemplars to challenge audio recordings, based on an allegation

that the audio recordings were not of his voice.  However, even if the voice on the wiretap recordings was not Lombard's, there is no showing that this error was prejudicial to his defense.

Assuming that it was actually some other individual on the wiretap recordings, then the facts of the case would show something like this: an unknown individual was heard discussing the shipment of drugs with Del Toro and setting forth a time and place for those drugs to be handed over.  Investigators observed Lombard's vehicle, a 2013 Dodge Ram, at the site mentioned in the wiretap.  Then, they saw Lombard place PVC pipes his vehicle.  After the vehicle, driven by Lombard, pulled away, they followed it and observed several traffic violations.[4]  After stopping the vehicle, Detective Shock saw the aforementioned PVC pipes in the truck bed, and a drug-sniffing dog was called.  The dog then alerted to the presence of narcotics, which were ultimately found in the PVC pipes in the bed of the truck, along with the actual phone used in the calls to Del Toro that appeared on the wiretap.

Thus, even if Lombard could prove it was someone else's voice on the wiretap, investigators still had reasonable suspicion for the stop and probable cause for the search of the truck, and the drugs found in his truck, coupled with the other information in the warrant, provided sufficient probable cause to search Lombard's home.

Similarly, there was sufficient evidence to uphold Lombard's conviction of conspiracy, even without an identification of his voice on the wiretap.  Lombard appeared at the time and place indicated by Del Toro.  He was seen taking the pvc pipes, which were filled with heroin, and

---

[4] In Lombard's appeal, the Sixth Circuit noted that the observed traffic violations alone, even without the foregoing knowledge of Lombard's connection to drug trafficking, would have provided reasonable suspicion to stop Lombard and call the drug-sniffing dog which then alerted to the presence of narcotics. *See* ECF No. 73, PageID.964.

putting them in his truck.  Then, once he was stopped, the cell phone used to communicate with Del Toro was found in the vehicle he was in.

At most, a successful challenge to Lombard's voice identification would have established that an unknown third party was *also* involved in the conspiracy, not that Lombard was *not* a member of the conspiracy.  Thus, even a successful challenge to the identification of Lombard's voice on the wiretap would have had no effect on the case's outcome, and trial counsel's failure to ask for a voice exemplar did not prejudice Lombard's defense.  There was thus no violation of Lombard's right to effective assistance of counsel under *Strickland*.

### c. *Failure to Challenge Field Test*

Lombard's last argument as to ineffective assistance of counsel is that his attorney should have challenged the field test on the substance found in the pvc pipes in his vehicle, both on a motion to suppress and at trial.  This argument also fails to show prejudice because, even assuming its correctness, there is no reasonable probability that it would have changed the outcome of the case.

Lombard was charged under 21 U.S.C. § 841(a)(1), which makes it a crime to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance," and 21 U.S.C. § 846, which criminalizes a conspiracy to do the same. Lombard notes that the Covenant document indicates that "suspected cocaine" had been seized from Lombard's truck.  (ECF No. 77, PageID.998.)  Indeed, during trial, the jury was told that initially the drugs found in Lombard's truck were identified as suspected cocaine in a field test, but that they later tested positive for heroin in the lab.  (ECF No. 68, PageID.571, 638.)

The two charges Lombard was convicted of involved heroin, but not cocaine.  (ECF No. 51.)  Lombard now argues that since "basic chemistry" can explain differences between the two

substances, Kinney provided ineffective assistance when he "failed to properly advocate for [Lombard]." (ECF No. 77, PageID.982.)  But Lombard never explains how Kinney should have "properly advocated" for him with respect to the field test.  Assuming Lombard is suggesting that Kinney should have argued, either in a motion to suppress or at trial, that the initial field test tainted everything that followed – the seizure of what ultimately turned out to be heroin from the truck, the issuance and execution of the search warrant which turned up more heroin, that argument lacks merit.  Lombard cites no precedent – and the Court can find none – to substantiate that mistaking one "suspected" controlled substance in a warrant affidavit for another actual controlled substance would justify suppression of the warrant.  Indeed, merely showing that the field test identified one illegal controlled substance instead of another would not have changed any actions taken by the agents, or any information presented to the jury.  Either way the affidavit correctly stated that a controlled substance was found in Lombard's vehicle and based on that and the other information stated in the warrant, agents suspected they would find more controlled substances in Lombard's home.

Furthermore, even if the Court accepts that the warrant should have been suppressed, it would have made no difference to Lombard's guilt or his sentence.  Lombard never explains why the incorrect initial field test would justify suppression of the heroin found *in his truck*.  And, as explained above, the 11 kg. of heroin seized from his truck was sufficient to support Lombard's guilt on both Counts and to subject him to the most stringent sentencing guidelines for those charges.

In short, Lombard fails to show that a vigorous challenge to the initial field test would have led to a reasonable probability of a different outcome in his case.  Thus, Lombard fails to demonstrate any prejudice that would entitle him to relief on his instant § 2255 motion.

### 3. *New Evidentiary Hearing and Recusal of Judge Cox*

Finally, Lombard argues that, based on the foregoing arguments, a new evidentiary hearing and discovery should be granted, and Judge Cox should recuse himself for that proceeding. These requests lack merit. As discussed above, Lombard has not demonstrated the type of factual dispute that would justify holding an evidentiary hearing. Lombard argues no factual dispute underlying Judge Cox's refusal to grant substitute counsel, but instead argues that that decision was faulty as a matter of law. While some of Lombard's arguments regarding ineffective assistance of counsel contain factual elements, as explained above, even assuming Lombard's version of them, he failed to show a reasonable probability of a different outcome in his case. Thus, Lombard has not shown any reason for the Court to grant a new evidentiary hearing.

As far as his request for discovery is concerned, the evidentiary bar for demonstrating a right to new discovery is low. District courts may grant "discovery in a habeas proceeding if the 'petitioner presents specific allegations showing reason to believe that the facts, if fully developed, may lead the district court to believe that federal habeas relief is appropriate.'" *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009) (quoting *Lott v. Coyle,* 261 F.3d 594, 602 (6th Cir. 2001)). However, "bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) (internal quotations omitted). Furthermore, allowing new discovery is inappropriate "where "[t]he discovery sought by [the claimant] would not resolve any factual disputes that could entitle him to relief, even if the facts were found in his favor." *Id*. at 460 (6th Cir. 2001). Again, the Court has explained above why the facts alleged by Lombard are not reasonably likely to result in a different outcome; indeed, they would not change the outcome at all, as they would have no material effect on his guilt or his sentence.

In sum, Lombard's request for a new hearing and discovery should be rejected. Furthermore, because there is no need for a new evidentiary hearing or discovery, there would be no occasion for Judge Cox to recuse himself.[5]

### D.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Lombard's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence **(ECF No. 77)** be **DENIED**.

### E.    Certificate of Appealability

When considering a § 2255 motion, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner must obtain a certificate of appealability ("COA") before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases like Lombard's where the petitioner's claims are rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, for all of the reasons stated above, the Court finds that Lombard did not make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and cannot satisfy the *Slack* criteria. Accordingly, the Court should deny Lombard a certificate of appealability.

Dated: May 12, 2021                                s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                              United States Magistrate Judge

---

[5] On March 22, 2021, Lombard filed a letter asking the Court to require the government to disclose whether, pursuant to the limited attorney-client privilege waiver ordered by the Court, the government "made inquiry of [his] former counsel . . ." (ECF No. 105.) No such relief is warranted, as the facts discussed herein are all found in the record.

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 12, 2021.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager